IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-01414-PSF

TATANJIA "TAJ" WILLYARD,

    Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner,
Social Security Administration,

    Defendant.

## ORDER ON SOCIAL SECURITY APPEAL

This matter came before the Court for oral argument on July 10, 2006, at 11:00 a.m. The Court having received the arguments and submissions of counsel enters the following Order.

## I. BACKGROUND

Plaintiff Tatanjia Willyard appeals from the decision of the Defendant Commissioner denying social security benefits. The Commissioner's decision became final on May 26, 2005, when the Appeals Council notified plaintiff that it found no reason to review the Administrative Law Judge's ("ALJ's") decision of February 24, 2005. Plaintiff timely filed her appeal in this Court on July 27, 2005 (Dkt. # 3). The Social Security Administrative Record ("AR") was filed on October 27, 2005 (Dkt. # 8). The Court has jurisdiction to review the final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

Ms. Willyard filed her claim for benefits on April 15, 2003, claiming an onset date

of December 15, 2000. AR 41. In her Disability Report, Ms. Willyard explained that "profound hearing loss, bone spurs, back injury, [and] wrist/arm/shoulder/neck/back pain" constitute her disability and limit her ability to work. AR 61. Ms. Willyard previously filed for benefits on December 31, 2001, which were denied and not appealed. AR 14. The record does not reveal the time period or alleged onset date upon which this earlier application was based. She states in her present Application for Benefits that she has "no good reason on why I did not file an appeal." AR 43.

The medical record shows that Ms. Willyard first sought medical help during the relevant period on January 18, 2001, visiting an orthopedist, Dr. Mark Melhorn, for pain and numbness in her arms, hands and wrists. AR 147. Dr. Melhorn prescribed a "conservative approach" including "education with regard to the diagnosis," heat in the morning, and coolness in the evening. AR 148. He did not prescribe Celebrex "since she is currently pregnant." *Id.*

Plaintiff next presented for a consultative evaluation on February 12, 2002 at the request of Disability Determination Services, presumably in connection with her earlier denied application. AR 121-24, Pl.'s Op. Br. at 4. Dr. Niranjan Baxi detailed plaintiff's complaints of back problems, carpal tunnel syndrome, bone spurs and deafness. AR 121. Dr. Baxi's examination revealed that Ms. Willyard was overweight, displayed intact hearing at two feet, showed no evidence of osteoarthritis of the hands, had full movement of all joints, and had no difficulty in getting on and off the examining table. AR 122-23. However, the examination also revealed that Ms. Willyard had mild difficulty with heel and toe walking, could not perform certain orthopedic maneuvers,

had diminished Jamar strength (grip) testing bilaterally in her hands, had diminished range of motion in the lumbar spine, and showed minimal narrowing of the L4-5 and L5-S1 disc space in her spine. AR 123. Dr. Baxi noted that the "remaining disc spaces appear adequately maintained" and surmised that "[w]eight loss may be helpful." *Id.*

Five days later, on February 17, 2002, Ms. Willyard sought emergency room treatment for a cough, congestion, chest tightness and fatigue that she reported had been ongoing for three weeks. AR 135. She was diagnosed with acute bronchitis. AR 137.

Ms. Willyard visited Dr. Allan Franklin on October 21, 2003 for a hearing evaluation. Dr. Franklin concluded that she has a "severe to profound" hearing loss in both ears and that hearing aids were medically necessary. AR 144. He further noted that such aids would not "solve her communication problems. Amplification will recoup only a portion of her hearing loss." *Id.*

Finally, plaintiff again sought emergency room treatment, this time for low back pain, on October 18, 2004. AR 154. Apparently plaintiff had slipped on some stairs four days prior. *Id.* X-rays showed mild L4-5 disk space narrowing, as previously noted by Dr. Baxi, as well as degenerative disk disease in her lumbar spine. AR 153-54. Her ability to bend forward and backward were limited due to pain. AR 154.

The ALJ held a hearing on June 21, 2004, at which plaintiff and a vocational expert, Nora Dunne, testified. AR 179-207. Ms. Willyard was represented by counsel. The ALJ issued his decision denying benefits on February 24, 2005, finding Ms. Willyard "not disabled as defined in the Social Security Act." AR 15.

**II. THE ALJ'S DECISION**

In his written decision, the ALJ among other things denied plaintiff's application for benefits at step five of the five-step evaluation process. AR 19-21; *see generally Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). In reaching his determination, the ALJ first determined that plaintiff had not engaged in substantial gainful activity from the alleged onset date through February 23, 2004, when Ms. Willyard began a job at Kinko's. AR 15; AR 185. Based on her employment and the evidence before him, the ALJ properly found that Ms. Willyard engaged in substantial gainful activity since February 23, and thus is not disabled from that date forward, AR 15, a determination not challenged by plaintiff.

In evaluating her disability claim from the alleged onset date until February 23, 2004, the ALJ found that plaintiff suffered from "severe impairment of hearing loss in both ears, bone spur in her heel, and pain and numbness in her wrists." *Id.* He also found, however, that "[t]here is no medical evidence to support her claim of severe low back pain." AR 16. The ALJ found that plaintiff's impairments–individually or in combination–did not meet the criteria of any listed impairments of Appendix 1 to Subpart P of the Social Security Regulations. *Id.*

Turning to plaintiff's residual functional capacity ("RFC"), the ALJ determined that Ms. Willyard has the "capacity to perform sedentary work-related activities with pushing, pulling, lifting, and/or carrying ten pounds occasionally and less than ten pounds frequently; sitting six hours in an eight hour workday; standing and/or walking

two hours in an eight hour workday." AR 19. He qualified this assessment by finding that plaintiff "cannot deal with the general public, no excessively noisy work environments, and no accurate hearing required (*i.e.* telephone usage)." *Id.* The ALJ reached this determination after considering several factors: daily activities; location, duration, frequency and intensity of symptoms, including pain; precipitating and aggravating factors; medication; treatment; any measures other than medications used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. AR 16-17. In evaluating the evidence before him, the ALJ found "that the claimant was not a persuasive witness" and that her "lack of pain medication is inconsistent with [her] claim of disabling pain and impacts negatively on her credibility." AR 17; *see also* AR 18 (discussing lack of strong pain medication).

The ALJ also noted that no medical records evidenced any use of wrist supports by plaintiff or any surgery for her alleged carpal tunnel syndrome, AR 17, and that she has only seen a physician on one occasion for this alleged disability. AR 18. Such a lack of medical care "reflects negatively on the claimant's credibility" and also indicates that the alleged condition "is not as limiting as [Ms. Willyard] asserts." *Id.*

Finally, the ALJ noted that Ms. Willyard currently "appears to be working above the residual functional capacity found in this decision" and that her "activities of daily living indicate she can work above her residual functional capacity." *Id.* The ALJ rejected Ms. Willyard's claim that she could not lift her children, "as she was divorced and lived alone with her two children. She would have had to lift her baby to feed, clean, and diaper her." *Id.* Additionally, Ms. Willyard "is able to drive, cook, clean, and

take care of her and her children's personal needs." *Id.*

After determining Ms. Willyard's RFC, the ALJ turned to step four of the evaluation process to determine whether she was able to perform any past relevant work activity. Based on Ms. Willyard's description of her previous work as a graphic designer, the ALJ agreed with the opinion of the vocational expert that plaintiff's RFC "allows her to return to work as a graphic designer." AR 19. Alternatively, the ALJ found Ms. Willyard unable to perform any of her past relevant work, and continued to step five of the evaluation and assumed the burden to show that other jobs exist in significant numbers in the national economy that plaintiff could perform. *Id.* The ALJ used the Medical-Vocational Guidelines of Appendix 2 of Subpart P of Social Security Regulations No. 4 to find examples of such jobs, and thus determine that "claimant has not been under a disability as defined in the Social Security Act and Regulations at any time since December 15, 2000, and through the date of this decision." AR 20.

### III.  PLAINTIFF'S APPEAL

Ms. Willyard alleges that the ALJ erred in his denial of benefits for four reasons. First, she contends that the ALJ improperly determined that her prior work as a graphic artist constituted past relevant work. Pl.'s Op. Br. at iv. Second, the ALJ erred in concluding that her low back pain was a nonsevere impairment. *Id.* Third, the ALJ improperly evaluated plaintiff's complaints of pain and her credibility when determining her RFC. *Id.* Finally, plaintiff contends that the ALJ's findings that plaintiff can perform certain unskilled, sedentary work with some hearing limitations is not supported by substantial evidence or applicable law, and the ALJ did not properly consider all of her

impairments in determining her RFC.  *Id.*  Ms. Willyard also requests that on remand, the ALJ address whether she should be entitled to a trial work period beginning February 23, 2004, when she returned to work, as well as whether her prior application filed December 31, 2001 should be reopened.  *Id.*  Defendant essentially argues that the record contains substantial evidence supporting the ALJ's decision that plaintiff was not disabled within the meaning of the Social Security Act.  Def.'s Resp. Br. at 5.

## IV.  STANDARD OF REVIEW

When a federal court reviews the Commissioner of Social Security's decision to deny social security benefits, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001).  The court's job is to decide whether substantial evidence in the record supports the Commissioner's factual findings as a whole and whether the Commissioner applied correct legal standards.  *Id.*, *Castellano v. Sec'y of Health and Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994).

Substantial evidence is defined as more than a scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See e.g. Soliz v. Chater*, 82 F.3d 373, 375 (10th Cir. 1996); *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989).  Put another way, if other evidence in the record overwhelms the Commissioner's determination, or if only a mere scintilla of evidence supports the decision, it is not based upon substantial evidence.  *Ricketts v. Apfel*, 16 F. Supp. 2d 1280, 1287 (D. Colo. 1998).  The Commissioner's decision may also be reversed for application of the wrong legal

standard. *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) (citing *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987)).

## V.  ANALYSIS

### A.  Plaintiff's Previous Work as a Graphic Designer

The Commissioner concedes that the ALJ's finding that plaintiff could return to her past relevant work lacked support in the record, primarily because she did not perform graphic designer work at the level of "substantial gainful activity." Def.'s Resp. Br. at 7.  However, the ALJ made an alternative finding at step five, finding that plaintiff could perform certain unskilled sedentary to light jobs of semiconductor bonder, small products assembler and electronics worker. *Id.* at 6; AR 20, 21.

### B.  Plaintiff's Low Back Impairment

The ALJ concluded that Ms. Willyard's low back impairment was nonsevere at step two of the evaluation process based on a lack of medical evidence. AR 16. At step two, a claimant has the burden to "demonstrate an impairment or combination of impairments that significantly limits the claimant's ability to do basic work activity." *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) (citing 20 C.F.R. § 404.1520(c)). Although step two requires only a "de minimis" showing of impairment, *id.*, "the claimant must show more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)). If the severity of a claimant's impairments is so slight that they could not interfere with the claimant's ability to do basic work activities, they do not constitute severe impairments at step two. *Williams v. Bowen*, 844 F.2d 748, 751 (10th

Cir. 1998).

Medical records of plaintiff's spine during the relevant period show minimal narrowing of her L4-5 disk space (AR 123, 153). However, Dr. Baxi's evaluation also noted that plaintiff "had no difficulty getting on and off the examining table . . . has no history of orthopedic injury . . . [g]ait and station are stable. No assistive device is used today . . . [t]here is no asymmetrical reflex, sensory or motor deficit noted . . . [and] remaining disk spaces appear adequately maintained. Weight loss may be helpful." AR 123. Dr. Baxi's examination, in combination with plaintiff's apparent ability to perform various daily activities and to work at Kinko's, support a finding that the low back pain "could not interfere with or have a serious impact on the claimant's ability to do basic work activities." *Williams*, 844 F.2d at 751.

Further, the ALJ found that Ms. Willyard was not a persuasive witness regarding her alleged pain and resulting limitations. AR 17-18, 20. Such a credibility determination by an ALJ in such proceedings is "peculiarly the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). The record reflects substantial evidence supporting the ALJ's determination, such as a lack of ongoing treatment, failure to follow up when so advised, use of only over-the-counter medication for pain, and her return to work.[1] Without reweighing the

---

[1] The ALJ also claimed that Ms. Willyard's credibility was undermined when the record failed to corroborate her report that she was prescribed Vicodin for pain. *See* Def.'s Op. Br. at 10. However, the Court notes that the record does reflect that she was prescribed Vicodin at least once, in 1995. AR 105. Regardless, the ALJ's credibility determination is supported by other substantial evidence in the record.

9

evidence, the Court finds that the ALJ's determination regarding Ms. Willyard's low back pain is sufficiently supported by the record.

### C. Plaintiff's Complaints of Pain and Credibility

As plaintiff describes, an "ALJ is required to consider a claimant's complaints by evaluating her use of medication, her attempts, medical and non-medical, to obtain relief, the frequency of her medical contacts, the nature of her daily activities, as well as subjective measures of credibility, including the consistency of non-medical testimony with the objective medical evidence." Pl.'s Op. Br. at 16-17 (citing SSR 96-7p). Here, the ALJ properly noted plaintiff's use of only over-the-counter pain medication, her lack of medical treatment including a single visit to a doctor for her alleged carpal tunnel syndrome, her work situation at Kinko's, and her activities of daily living with two small children as all supporting his determination that her physical impairments are not as limiting as she alleges. AR 17-18.

Plaintiff contends that the ALJ erred in not considering her testimony that she cannot afford medical care, that her symptoms are relieved by nonactivity, and that she avoids prescription medication because it makes her feel loopy and she does not want to set a bad example for her children. Pl.'s Op. Br. at 17. However, such testimony was considered by the ALJ. He noted that she had visited the emergency room twice for other medical issues during the relevant period, which he found to undermine her claim that she could not get access to medical care. AR 18. (If as plaintiff contends she only went once, not twice, for emergency room treatment, Pl.'s Op. Br. at 17, that does not negate the availability of such care to her.) Further, as the Commissioner

notes, "the record showed that she obtained treatment for her severe hearing impairment when necessary, and there is no evidence in the record she attempted to obtain treatment from a medical clinic for low-income individuals." Def.'s Resp. Br. at 10. The ALJ also recognized that plaintiff's current work situation and daily living activities suggest she can work above the residual functional capacity he determined. AR 18. Finally, the ALJ determined that despite her stated reasons for avoiding prescription medication, her use of only over-the-counter medication coupled with a lack of ongoing treatment showed that plaintiff's limitations were not as severe as alleged. *Id.*

Such an evaluation did not constitute improper cherry-picking as alleged by plaintiff. *See* Pl.'s Op. Br. at 16. Rather, the ALJ considered the entire record and rejected certain parts of her testimony as inconsistent with the record as a whole. Although a different balance between the objective medical evidence and plaintiff's testimony might conceivably have been struck by another factfinder, a district court may neither reweigh the evidence nor substitute its discretion for that of the ALJ. *See e.g. Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995). Here, the ALJ properly set forth the specific and sufficient evidence relied upon in determining that Ms. Willyard's subjective complaints were not fully credible. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

### D. The ALJ's Determination of Plaintiff's RFC

Plaintiff contends that the ALJ failed to properly address her limitations on the use of her hands and the full extent of her limitations due to her hearing loss when

11

deciding plaintiff's RFC.[2]  Pl.'s Op. Br. at 20-21.  However, the ALJ addressed her limitations due to pain and numbness in her hands by restricting her to lifting and carrying only ten pounds occasionally and less than ten pounds frequently.  AR 18-19.  He also found her alleged significant difficulty with grasping, reaching and manipulating to be not credible based on a lack of treatment and lack of medical evidence.  AR 18; *see also* AR 123 ("Signature is free flowing and legible with the dominant right hand.  No interosseous[3] muscle wasting is found.  Grip strength and dexterity are preserved.").

As to plaintiff's limitations due to hearing loss, the ALJ restricted her to work environments without excessive noise.  AR 19.  The Commissioner admits that the small products assembler job mentioned as an example does not fit plaintiff's limitations as "it involves a loud noise intensity level."  Def.'s Resp. Br. at 13.  However, the other two jobs identified by the vocational expert–semiconductor bonder and electronics worker–involve only a moderate noise level, consistent with the ALJ's restriction.  *Id.*  Plaintiff presents no evidence, medical or otherwise, to support her contention that "she should probably avoid environments with a moderate noise level and should be restricted to work in a quiet noise environment."  Pl.'s Op. Br. at 20.

Based on the record presented, the Court finds that substantial evidence

---

[2]Plaintiff also challenges the ALJ's alleged failure to properly address "the limitations on her sitting due to her low back impairment."  Pl.'s Op. Br. at 21.  However, as the Court has already determined the propriety of the ALJ's determination that her low back impairment was nonsevere, it is unnecessary to further address this assertion here.

[3]"Situated between bones; as, an interosseous ligament."  On-line Medical Dictionary, http://cancerweb.ncl.ac.uk/cgi-bin/omd?interosseous.

supports the ALJ's final decision that Ms. Willyard, a younger individual with a college education who was working at the time of the hearing, is apparently self-sufficient in her daily activities and is raising two children on her own, was not disabled within the meaning of the Social Security Act during the relevant period.  Therefore, it is unnecessary for the Court to address plaintiff's requests that the ALJ consider a trial work period and reopen her prior application.

## VI.  CONCLUSION

For the reasons set forth above, the Court finds that the record contains substantial evidence supporting the conclusion that plaintiff is not disabled within the meaning of the Social Security Act and the Commissioner's decision is AFFIRMED.

DATED:   July 12, 2006

BY THE COURT:

*s/ Phillip S. Figa*
_____
Phillip S. Figa
United States District Judge